**STATE of Missouri, ex rel. Charles WILLMAN, M.D., Respondent,**

**v.**

**ST. JOSEPH HOSPITAL, Appellant.**

**No. WD 35665.**

Missouri Court of Appeals, Western District.

Nov. 7, 1984.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Dec. 26, 1984.

Application to Transfer Denied Feb. 26, 1985.

Thomas G. Kokoruda (argued), Jennifer A. Gille and Suzanne Shank, Kansas City, for appellant.

John C. Milholland (argued), Kansas City, for respondent.

Before KENNEDY, P.J., and NUGENT and BERREY, JJ.

NUGENT, Judge.

St. Joseph Hospital appeals from the circuit court's judgment on the pleadings and issuance of a peremptory writ of mandamus directing it to reinstate the hospital and staff privileges of Dr. Charles Willman which were revoked by the hospital's governing body, such revocation being a breach of contract. We reverse the judgment of the circuit court and affirm the hospital's revocation of Dr. Willman's hospital and staff privileges.

St. Joseph hospital is a not for profit corporation organized under the laws of Missouri. Dr. Willman is a medical practitioner who has hospital and staff privileges with the appellant hospital. On November 8, 1983, the hospital's board of directors revoked the doctor's privileges by affirming earlier decisions or recommendations of various medical staff committees. The doctor complains that the procedures employed by the hospital in revoking his privileges were not in accord with the hospital's corporate bylaws and the "medical staff bylaws." He does not raise any issue as to the substantive reasons leading to the revocation. The facts of this case are not in dispute.

In the fall of 1982, in accordance with the "medical staff bylaws," the hospital's board of directors requested that the medical staff review the doctor's work at the hospital. The doctor was notified of this request by letter in October of 1982. The executive committee of the staff conducted the review and recommended to the medical staff's credentials committee that corrective action be taken. The doctor was notified of this recommendation and appeared before the credentials committee where his case was discussed. The credentials committee reported to the executive committee recommending corrective action.

In May of 1983, the executive committee notified the doctor of the report, and the doctor was allowed to appear before the executive committee where once again his case was discussed. The committee unanimously voted to revoke his privileges. By a letter dated June 8, 1982, he was notified of that decision.

The major issue before us stems from the following language used in the June 8 letter: "At the conclusion of the Executive Committee meeting which you appeared before on June 7, 1983, the committee voted unanimously to *revoke* your hospital privileges in total, effective immediately." (Emphasis added.) The doctor contends and the trial court found that the staff bylaws authorize the executive committee only to recommend a revocation, that it is not authorized to revoke a practitioner's privileges. Power to revoke is vested solely in the hospital's board of directors. The June 8 letter also informed the doctor of his right to a hearing before an ad hoc committee of the medical staff.

The doctor exercised this right and the hearing was conducted on August 31, 1983. The ad hoc committee subsequently affirmed the executive committee's decision. The doctor was duly notified and informed of his appeal rights under the bylaws. He exercised those rights, and the hospital's board of directors appointed an appellate review committee. That committee reviewed the earlier decisions and recommended that the board affirm the earlier recommendations. The board of directors affirmed the committee's recommendation, and on November 8, 1983, notified the doctor that his privileges had been finally revoked.

On November 17, 1983, Dr. Willman filed a proceeding in mandamus in the circuit court. The court issued a preliminary writ, and in December of 1983 the doctor moved for a judgment on the pleadings. Rule 55.27(b). The court sustained the motion, entered judgment, and issued a peremptory writ of mandamus directing the hospital to reinstate the doctor. The court concluded that the staff bylaws constitute a contract between the doctor and the hospital, and that the procedures followed in revoking the relator's privileges were not in accord with the bylaws and, therefore, the hospital's revocation was a breach of contract. The court also held that mandamus was the

proper remedy, since it was the doctor's only adequate legal remedy.

Following that decision, the hospital on January 9, 1984, moved that the circuit judge recuse himself on the ground that the judge had at one time been the doctor's patient. The court later denied the motion. On January 11, 1984, the hospital filed a motion to amend the judgment entry and peremptory writ of mandamus. On January 31, 1984, the court denied that motion and the hospital appealed. Rules 81.04; 81.05; and 78.04.

The hospital raises several points on appeal, but its last point is controlling and is the basis of our decision; we need not address appellant's other points. We assume for purposes of this decision but do not hold that the bylaws are a contract and mandamus is the correct remedy.

The circuit court granted Dr. Willman's motion for judgment on the pleadings. The scope of our review is set forth in *McIntosh v. Foulke*, 360 Mo. 481, 228 S.W.2d 757, 760–61 (1950), where the court held that

> such a motion is sustainable only where, 'under the conceded facts, a judgment different from that pronounced could not be rendered notwithstanding any evidence which might be produced. In other words, it cannot be sustained unless, under the admitted facts the moving party is entitled to judgment, without regard to what the findings might be on the facts upon which issue is joined.'

The problem in this case is that the undisputed facts do not support a judgment for Dr. Willman on any ground. The circuit court erred in its reading of the hospital bylaws and in finding that the bylaws were violated so as to constitute a breach of contract.

The trial court's judgment was based solely upon its finding that the staff bylaws do not authorize an executive committee of the hospital's medical staff to revoke a practitioner's privileges, that the committee is authorized only to recommend revocation to the board of directors, and the board is the only hospital body authorized to make such a decision. The trial court found that the executive committee's letter of June 8, stating that the doctor's privileges were revoked was a breach of contract, and all the procedures that followed were null because of that defect.

The hospital's corporate bylaws provide that the board shall delegate to the medical staff the responsibility and authority to investigate and evaluate all matters relating to medical staff membership including making recommendations for corrective action. Those bylaws also prescribe that the procedures to be followed by the medical staff in recommending corrective action be set forth in "medical staff bylaws." Those bylaws had been duly adopted and were followed in this case except for one variation. The bylaws further provide that the board shall take final action on all medical staff membership matters after considering staff recommendations.

The prescribed reviews, the hearing and the appellate review afforded Dr. Willman were in accordance with the hospital and medical staff bylaws. As the court found, the medical staff bylaws in fact authorize the executive committee only to *recommend* that a practitioner's privileges be revoked. When that recommendation is made, the practitioner is entitled to the procedural rights afforded under Article VI of the staff bylaws. Section (2)(c) of Article VI of those bylaws provides that "the adverse recommendation or decision shall remain effective against the practitioner pending the governing body's final decision."

▮ Assuming that the bylaws are a contract, they should be read and construed as a whole. *See Beck v. Hoel-Steffen Const. Co.,* 605 S.W.2d 810, 813 (Mo. App.1980); *J.K. Seear (U.S.A.) Ltd. v. C.O. Jones & Son Insurance Agency,* 364 S.W.2d 640, 642 (Mo.App.1963). But even if we do not treat the bylaws as a contract, the rules of construction that apply to statutes and contracts apply to corporation charters and bylaws. *Missouri State Teachers Ass'n v. St. Louis Suburban*

*Teachers Ass'n,* 622 S.W.2d 745, 749 (Mo. App.1981); *Toler v. Clark Rural Elec. Cooperative Corp.,* 512 S.W.2d 25, 26 (Ky. App.1974). Reading the section authorizing the executive committee to recommend the revocation of privileges together with section (2)(c) of Article VI (providing that a recommendation is effective pending final decision) makes clear that when the executive committee *recommends* revocation the practitioner thereupon loses his privileges pending review. In effect, the bylaws authorize the executive committee to *suspend* a practitioner's privileges until the board of directors, the governing body, makes the final determination.

■ The executive committee's use of the word "revoke" in the June 8 letter rather than the words "recommending revocation" caused the doctor no harm. Whether the committee stated that it was "recommending revocation" or "revoking" the practitioner's privileges, the result was a suspension of those privileges. The doctor was afforded the protection of all the prescribed procedures after the initial executive committee decision. The board after reviewing the various recommendations and decisions made the final determination. Minor or technical variations from hospital bylaws are things of which the law does not take notice. *Miller v. Indiana Hospital,* 277 Pa.Super. 370, 419 A.2d 1191, 1194 (1980); *Hart City Board of Education v. Broady,* 577 S.W.2d 423, 426 (Ky.App. 1979).

In his petition the doctor alleged other violations of its bylaws by the hospital. The trial court did not base its decision on those additional allegations, and the doctor did not brief those points as alternative grounds for the circuit court decision. We will address them, however, to show that no ground appears upon which judgment could have been entered for the doctor.

■ First, Dr. Willman complains that he was not afforded a fair hearing by the board of directors as required by the hospital's corporate bylaws. He misreads those bylaws because they only provide that corrective action recommended by the medical

staff be made in accordance with a "fair hearing plan" approved by the board. The medical staff bylaws include such a hearing plan and those bylaws, including the "fair hearing plan," were approved by the board. Such a hearing was conducted, and the doctor does not allege that the hearing itself was defective.

The doctor in his petition below also complained that a subjective standard of "necessity" was used to determine whether a practitioner subject to corrective action will receive a hearing and appellate review. Since a hearing and appellate review were conducted in his case, however, he has no cause for complaint on that ground.

■ Next the doctor asserts that the appellate review committee did not affirm a decision of the governing body of the hospital as required by the bylaws. The medical staff bylaws provide for an appeal to the governing body, the board of directors, from an adverse recommendation concerning a practitioner's privileges. When the appeal procedure is initiated, the board appoints an appellate review committee. The bylaws confusingly provide that "after the appellate review committee meeting, they shall recommend in writing to the governing body, to affirm, modify, or reverse *its prior decision.*" The provision makes little sense since the board at that stage of review has made no "prior decision" and does not make its decision until after the appellate review committee makes its recommendation. Since the board in this particular situation acts only after the appellate procedure, the only sensible interpretation of this provision is that the review is of the earlier executive and credentials committee recommendations. This interpretation is supported by a reading of the bylaws as a whole which shows that the procedure is designed to give the board the final word in revoking staff privileges. The doctor was afforded an appellate review and the hospital board made the final determination.

■ Finally, the doctor in his initial pleadings raised an issue as to whether he

was denied procedural due process under the Fourteenth Amendment of the United States Constitution. The hospital argues that no state action occurred. Even if the hospital's action was state action, the doctor was afforded ample procedural rights to satisfy any constitutional requirements. *See Klinge v. Lutheran Charities Ass'n. of St. Louis,* 523 F.2d 56, 61 (8th Cir.1975).

We hold that Dr. Willman was afforded the procedures provided for in the corporate and the medical staff bylaws and that the only deviation from those bylaws was of no consequence. Accordingly, we reverse the judgment of the circuit court and remand the case to the trial court and direct the court to quash its peremptory writ of mandamus issued herein on December 27, 1983.

All concur.