The Honorable Jay Bradford State Representative Post Office Box 8367 Pine Bluff, AR 71611-8367
Dear Representative Bradford:
I am writing in response to your request for my opinion on the following question:
 Can a county government establish a car racetrack as a public recreational facility and charge admission and entry fees? This would be akin to a profit operation the proceeds of which would be reinvested into county government.
 RESPONSE
Pursuant to A.C.A. § 14-14-802(b)(2)(C)(vi) (Repl. 1998), counties are authorized to provide "recreation services." However, the establishment of car racetracks is strictly regulated pursuant to A.C.A. § 8-10-202 (Supp. 2005), which precludes constructing any such facility without the approval of 75% of property owners and 75% of registered voters located within three miles of the proposed facility. The statute further requires that the operators of such a facility obtain an annual permit from the Arkansas Department of Environmental Quality. I am neither equipped nor authorized to opine on the purely factual question of whether the proposed project would fall within the category of "recreation services" as that term is used in the above recited statute. With respect to your characterization of this proposed project as "akin to a profit operation the proceeds of which would be reinvested into county government," although a county "may exercise local legislative authority not denied by the Constitution or by law," Ark. Const. amend. 55, I do not believe counties are authorized to engage in business enterprises that do not themselves serve a public purpose. In my opinion, the mere prospect of realizing profit that might be "reinvested in county government" would not in itself warrant a county's operating a business unrelated to government activities.
As an initial matter, I should note that establishing a car racetrack is subject to strict regulation under the Arkansas Code. Specifically, A.C.A. § 8-10-303(a)(1)(A) (Supp. 2005) provides:
 Due to the noise pollution and air pollution from the racing vehicles and traffic congestion caused by motor vehicle racing facilities, no motor vehicle racing facility shall be constructed in this state after passage of this section without the consent of at least seventy-five percent (75%) of the property owners and seventy-five percent (75%) of the registered voters[1] within three (3) miles of the outside boundary of the proposed facility and without an annual permit issued by the Arkansas Department of Environmental Quality.
In my opinion, this provision is presumed constitutional even if applied to a political subdivision of the state like a county.See Ford v. Keith, 338 Ark. 487, 996 S.W.2d 20 (1999); ACW,Inc. v. Weiss, 329 Ark. 302, 947 S.W.2d 770 (1997) (both holding that legislation is presumed constitutional and that the burden of proving otherwise falls upon the party challenging the legislation).
Even assuming a county might be authorized, with the permission referenced in the statute just quoted, to establish a for-profit racetrack, I should note that the county's establishment of such an enterprise might well jeopardize any tax exemption the property might previously have enjoyed. Article 16, § 5(b) of the Arkansas Constitution exempts from property taxation any "public property used exclusively for public purposes." The question of whether participating in a commercial enterprise designed to realize a profit might be characterized as exclusively serving a "public purpose" is one of fact that I am neither authorized nor equipped to address. However, I will note that the Arkansas Supreme Court has declared on various occasions that in order for the Article 16, § 5(b) tax exemption to apply, it is not sufficient that the income realized from a use of public property be devoted to a public purpose; rather, the property itself must be used exclusively for a public purpose. See, e.g., CrittendenCounty Hospital Association v. Board of Equalization,330 Ark. 767, 772, 958 S.W.2d 512 (1997); Hilger v. Harding College,231 Ark. 686, 694, 331 S.W.2d 851 (1960).
You characterize the proposed enterprise both as "a public recreational facility" and as a mere "profit operation the proceeds of which would reinvested into county government." With respect to the first of these characterizations, Ark. Const. amend. 55(b) expressly authorizes a county to "exercise local legislative authority not denied by the Constitution or by law." Section 14-14-802 (b)(2)(C)(vi) of the Arkansas Code (Repl. 1998) further authorizes a county to provide through ordinance for the establishment of "[p]ark and recreation services."[2] SeeDudley v. Little River County, 305 Ark. 102, 107, 805 S.W.2d 645
1991) (requiring action "by ordinance or otherwise" to authorize services under A.C.A. § 14-14-802), compare Ark. Op. Att'y Gen. No. 91-358 (opining that a city might contract with a nonprofit corporation to provide a recreational program where the city had no financial interest in the business and would not be liable for any debts of the corporation, which would act as an independent contractor). Only a finder of fact acquainted with all of the circumstances could determine whether "establish[ing] a car racetrack as a public recreational facility" in this particular instance would fall within the above referenced powers accorded counties.
With respect to your second characterization of the proposed enterprise as motivated purely by a desire to generate profits to be used for county purposes, I am unaware of any authority for the proposition that a county might expend public funds, whether directly or through some other governmental or corporate entity, to support a business enterprise that does not itself serve a public purpose.[3] See Ark. Op. Att'y Gen. No. 96-186
("Counties, of course, are not profit-making entities, but rather, governmental subdivisions."). Having ventured this opinion, I must again stress that I am unable to address whether the proposed venture is statutorily authorized — i.e., whether the enterprise might properly be characterized as providing "recreation services" as contemplated in A.C.A. §14-14-802(b)(2)(C)(vi) — or whether the enterprise might otherwise be characterized as serving a public purpose.
To the extent that the proposed enterprise would involve the expenditure of dedicated tax revenues, I must further note that Ark. Const. art. 16, § 11 contains the following proscription:
 [N]o moneys arising from a tax levied for one purpose shall be used for any other purpose.
 See also generally Hartwick v. Thorne, 300 Ark. 502, 506,708 S.W.2d 531 (1989). In my opinion, even assuming an enterprise of the sort you describe were theoretically permissible under certain circumstances — a proposition I am not inclined to concede — the constitutional provision just quoted would preclude devoting dedicated tax revenues to the enterprise unless the taxes were expressly dedicated to this purpose.[4]
Nothing in the foregoing should be read as foreclosing a county from either directly or through a contractual relationship with some other entity, including even a private corporation, providing "recreational services." Indeed, in Ark. Op. Att'y Gen. No. 2005-215, relying on the statutory authorization of "recreation services" set forth at A.C.A. §14-14-802(b)(2)(B)(vi), I opined that a county might lease a firing range from a private entity "so long as the consequent operation of the firing range were otherwise legal and the lease served a public purpose." I further expressly opined that the question of whether the proposed lease would pass muster under this standard was one of fact that I could not address. Seealso Ark. Op. Att'y Gen. No. 2005-046 (opining that while a city was foreclosed by Ark. Const. art. 12, § 5 from simply donating funds to a Girls' Club or Boys' Club, it might constitutionally contract with such an entity to provide recreational or educational services). Again, the question of whether the proposed enterprise at issue in your request would qualify as a "recreational service" is one of fact that only a court could resolve.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB/JHD:cyh
[1] Prior to the enactment of Acts 2005, No. 1409, § 2, the term "registered voters read "adult residents." See Ark. Ops. Att'y Gen. No. 2001-053 (opining that this provision passed constitutional muster) and 2000-283 (discussing how the number of "adult residents" under previous law might be determined).
[2] I consider this statute tantamount to a legislative acknowledgment that the provision of "recreation services" falls within the scope of appropriate governmental activity in that it clearly serves a "public purpose." In Ark. Op. Att'y Gen. No.91-410, one of my predecessors described as follows what is generally known as the "public purpose doctrine":
 [T]he broad, but often difficult to define "public purpose" doctrine . . . generally requires that the expenditure of public funds be for a "public purpose." See generally Chandler v. Board of Trustees of the Teacher Retirement System of the State of Arkansas, 236 Ark. 256, 365 S.W.2d 497
(1963), and cf. specifically South Carolina Op. Att'y. Gen. issued April 24, 1987. It has been stated as regards this doctrine that "[n]o expenditure can be allowed legally except in a clear case where it appears that the welfare of the community and its inhabitants is involved and direct benefit results to the public." McQuillin, Municipal Corporations, § 12, 190. The determination of whether a particular expenditure is for a "public purpose" is to be made by the legislature. Although ultimately the propriety of a particular expenditure is resolved by the judiciary, great weight must be given legislative declarations of public purposes. Turner v. Woodruff, 286 Ark. 66, 698 S.W.2d 527 (1985).
[3] Although it appears likely that the enterprise you describe would entail some initial capital expenditure by the county, I recognize that you have not indicated that such is the case.
[4] This is, of course, not to suggest that general tax revenues levied for any county purpose might not be put to this use if a reviewing court deemed it permissible.